JOHN NICCOLLAI AND RENEE NICCOLLAI; JOSEPH SHERMAN AND LILA SHERMAN; BURTON LERNER AND RINA LERNER; RONALD HARRIS AND JANE HARRIS; PAUL DAVIS AND SHEILA DAVIS; JOHN SESSA AND ANNE SESSA; MARTIN ROSEN AND BARBARA ROSEN; PHILIP DE BRUNO AND GINA DE BRUNO; LEONARD LESNIAK AND JAN LESNIAK; IRWIN COHEN AND MRS. I. COHEN; STUART SEIGEL AND MRS. S. SEIGAL; KAY OLSON AND ANNELIESE OLSON; ROBERT ELLIS AND MRS. R. ELLIS, PLAINTIFFS-APPELLANTS, v. PLANNING BOARD OF THE TOWNSHIP OF WAYNE; MAYOR AND COUNCIL OF THE TOWNSHIP OF WAYNE; AND NOAH BERLEY, RALPH TEROWSKY AND JEROME MERZON, TRADING AS TERN ASSOCIATES, DEFENDANTS-RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued October 19, 1976—Decided March 3, 1977.

Before Judges LYNCH, MILMED and ANTELL.

*Mr. James V. Segreto* argued the cause for appellants (*Messrs. Segreto & Segreto*, attorneys).

*Mr. George O. Foster* argued the cause for respondent Planning Board of the Township of Wayne.

*Mr. Frank Scangarella* argued the cause for respondent Township of Wayne (*Messrs. Scangarella & Feeney*, attorneys; *Mr. Lawrence D. Katz*, Assistant Township Counsel, on the brief).

*Mr. William L. Brach* argued the cause for respondents Tern Associates (*Messrs. Brach, Eichler, Rosenberg & Silver*, attorneys; *Mr. George Y. Sodowick* on the brief).

The opinion of the court was delivered by

ANTELL, J. A. D.   The question presented on this appeal is whether a municipal zoning ordinance providing for the approval of residential cluster housing developments must conform to the requirements of the Municipal Planned Unit Development Act (1967), *N. J. S. A.* 40:55-54 *et seq.*

(hereinafter PUD). The judgment under review was entered in this action in lieu of prerogative writs by the Law Division, affirming the determination of the Wayne Township Council in granting tentative approval of a proposed Combination Residential Cluster Development Plan. The municipal action was taken by Resolution 118 on July 10, 1974 on the application of defendant Tern Associates for the construction of 140 single-family homes as part of the "Manitou" project. The Law Division held that the ordinance by which the proceeding was authorized is sanctioned by *N. J. S. A.* 40:55–30 and is not controlled by PUD.

"Cluster" is a term used to describe a method of zoning wherein the primary focus for the control of land use density is upon the overall area designated for development within a zoning district. It departs from the traditional "Euclidean" approach insofar as the latter employs the concept of uniform dwelling lot sizes throughout a district to achieve the desired level of land use density. *N. J. S. A.* 40:55–31. Thus, on a chosen site within a district, by using cluster techniques smaller lot sizes may be permitted than elsewhere in the same district under applicable zoning regulations. The land remaining on the site not used for dwelling lots is consolidated as common open space for conservation and the recreational use of all the residents. Although cluster zoning results in greater intensity of use on selected locations in the development, per acre density remains substantially the same as under conventional methods. *Sato and Van Alstyne, State and Local Government Law* 916 (1970); *Hagman, Urban Planning and Land Development Control Law,* § 236 at 458 (1971).

The history and purpose of PUD were delineated by both the trial and appellate courts in *Rudderow v. Mount Laurel Tp.,* 114 *N. J. Super.* 104 (Law Div. 1971), rev'd on other grounds 121 *N. J. Super.* 409 (App. Div. 1972). For a general discussion of PUD see "Symposium: Planned Unit Development," 114 *U. of Pa. L. Rev.* 3–170 (1965).

The action below was taken under Ordinance 82–1972, adopted by the Township of Wayne February 7, 1973, by which was created Combination Residence Cluster Districts "A" and "B". It is this enactment which lies at the heart of the controversy since it is said to be at variance with PUD, and therefore invalid, in the following material respects:

(a) It fails to refer to the act, *N. J. S. A.* 40:55–56(a);

(b) It fails to set forth the standards of development provided by § 3 of the statute. *N. J. S. A.* 40:55–57(b).

(c) It fails to require the plans and application to be forwarded to the Department of Community Affairs. *N. J. S. A.* 40:55–59(b).

(d) It fails to require the application to conform to *N. J. S. A.* 40:55–59(d).

(e) It fails to require testimony under oath at public hearings. *N. J. S. A.* 40:55–60(a).

(f) It fails to provide for the right of cross-examination at the public hearing. *N. J. S. A.* 40:55–60(a).

(g) It fails to require the preparation of a transcript of the public hearing. *N. J. S. A.* 40:55–60(b).

(h) It fails to provide for giving notice of the public hearing. *N. J. S. A.* 40:55–60(a).

From our comparison of the statute with the ordinance it is by no means clear that the latter is deficient in all the particulars enumerated. However, since defendants appear to concede that the ordinance does not conform with the statute,[1] and since at least some of plaintiffs' criticisms are borne out by our independent examination, we turn to the question of whether these lapses are fatal to the validity of the ordinance.

---

[1] It is noted that the township has also adopted what it considers to be a fully conforming PUD ordinance. It is contained in Ordinances 126, 161 and 176–1974. We regard this as lending support to the view that the concession is intentional and that the ordinance presented for review was not drafted to comply with the provisions of the act.

■ Defendants' contention that cluster zoning is not subject to PUD rests on the propositions that (1) the concepts of cluster housing and planned unit development are mutually exclusive in that clustering has to do only with the positioning of a use in a given area whereas PUD is intended to apply only where a mixture of residential and/or commercial, industrial and/or institutional uses is contemplated, and (2) the power of municipalities to permit cluster developments under *N. J. S. A.* 40:55–30 antedate PUD and is therefore unaffected by the passage of that act.

Plaintiffs' position is that cluster zoning is specifically covered by PUD and that the act applies regardless of whether this method of land use control is utilized alone or in combination with others. The preexisting power to pass cluster zoning ordinances is said to have been at best doubtful and in any case is now supplanted by the statutory grant of express regulated authority. It is urged that the Legislature should not reasonably be understood to have prescribed in such detail the statutory prerequisites for the enactment of an ordinance and then left the municipalities free to determine whether they will be so governed.

We conclude that the power to enact cluster ordinances may be exercised only in accordance with the standards ordained by the provisions of PUD which were in force when Wayne Township Ordinance #82–1972 was adopted and when tentative approval thereunder was granted.[2]

The powers created by PUD are made available to those municipalities which comply with the particulars recited in *N. J. S. A.* 40:55–56. Under *N. J. S. A.* 40:55–57(a) the uses permitted in a planned unit development are described in the following language:

---

[2]The act has in effect since been repealed by *L.* 1975, *c.* 291, § 80, eff. August 1, 1976, and replaced by the Municipal Land Use Law. *N. J. S. A.* 40:55D–1 et seq., eff. August 1, 1976.

(a) Permitted uses. An ordinance adopted pursuant to this act shall set forth the uses permitted in a planned unit development, which uses *may include* and shall be limited to (1) dwelling units in detached, semidetached, attached, groups of attached or clustered or multistoried structures, or any combination thereof; and (2) any nonresidential use, to the extent such nonresidential use is designed and intended to serve the residents of the planned unit development, and such other uses as exist or may reasonably be expected to exist in the future, and (3) public and private educational facilities, and (4) industrial uses and buildings.

An ordinance may establish regulations setting forth the timing of development among the various types of uses and subgroups thereunder, and may specify whether some nonresidential uses are to be built before, after or at the same time as the residential uses. [Emphasis supplied]

Particular note is taken that this section simply describes those uses which the ordinance "may include." The permissive character of this phrase clearly implies that the municipality may allow any one or more of the uses listed. No suggestion appears, as defendants maintain, that the act is operative only in connection with a "mix" of uses. Providing alternatives among a selection of uses either singly or in combination was obviously in response to the need for flexibility consistent with the stated purposes of the act. *N. J. S. A.* 40:55–55. This point is reinforced by the following definition of "planned unit development" in *N. J. S. A.* 40:55–65(e):

(e) "Planned unit development" or, in the alternative, "planned community" or "new town" is an area of land, controlled by a landowner, to be developed as a single entity for a number of dwelling units, including commercial and industrial uses, *if any*, the plan for which does not correspond in lot size, bulk or type of dwelling or commercial or industrial use, density, lot coverage and required open space to the regulations established in any one or more districts created, from time to time, under the provisions of a municipal zoning ordinance enacted pursuant to Revised Statute 40:55–30, *et seq.* (Emphasis supplied).

Here the Legislature makes it plain by the use of the italicized "if any" that the contemplated "commercial and industrial uses" are not indispensable to the composition of

a planned unit development. They are merely made optionally available for inclusion in such a development. This interpretation is borne out even further by *N. J. S. A.* 40:55–57(d), which provides:

(d) Minimum number of dwelling units. No ordinance adopted pursuant to the provisions of this act shall authorize a planned unit that contains less than 5 dwelling units, or less than 5 commercial uses, or 3 industrial uses, *singly or in combination.* [Emphasis supplied]

Certainly a planned unit development could very well change its form in the course of development. In this light the cluster device is nothing other than one of a number of PUD techniques and probably employed most often in the earliest stage of a development. The thought is contained in the following language in *Hagman, Urban Planning and Land Development Control Law,* § 236, at 458 (1971):

Cluster development and planned unit development are sometimes viewed as the same thing. It is more accurate to define cluster development as a device for grouping dwellings to increase dwelling densities on some portions of the development area in order to have other portions free of buildings.

Many planned unit developments use cluster development as a technique but the notion of planned unit development typically encompasses more.

On the foregoing considerations we therefore conclude that cluster housing is a form of planned unit development and that the municipal ordinances by which cluster zoning is authorized in this case must meet the standards elaborated by PUD, *N. J. S. A.* 40:55–54 *et seq.*

Defendants' claim of an option on the part of the township to adopt cluster zoning ordinances under Article 3 of the Zoning Act, *N. J. S. A.* 40:55–30 *et seq.,* free of compliance with PUD requirements is based upon language in *N. J. S. A.* 40:55–55 by which PUD powers are granted to municipalities "not in derogation of powers heretofore granted." Little authority is cited to support their postulate that such power existed prior to the enactment of PUD.

While it is true that cluster zoning ordinances were being adopted prior to PUD, *Chrinko v. So. Brunswick Tp. Planning Bd.*, 77 *N. J. Super.* 594 (Law Div. 1963); *Nelson v. So. Brunswick Planning Bd.*, 84 *N. J. Super.* 265 (App. Div. 1964); *Oakwood at Madison v. Madison Tp.*, 128 *N. J. Super.* 438 (Law Div. 1974), it is clear that the question of whether the power to do so existed was never decided. *So. Burl. Cty. N.A.A.C.P. v. Mt. Laurel Tp.*, 67 *N. J.* 151, 165, n. 4, app. dism. 423 *U. S.* 808, 96 *S. Ct.* 18, 46 *L. Ed.* 2d 28 (1975); *Mountcrest Est., Inc. v. Rockaway Mayor & Tp. Comm.*, 96 *N. J. Super.* 149, 156 (App. Div.), certif. den. 50 *N. J.* 295 (1967). Indeed, in commenting upon the model statute, after which the New Jersey act was patterned,[3] it was said that

This model enabling act was drafted to provide a legal framework within which new ideas could be tested and new demands could be better satisfied. The fact that numerous municipalities were already experimenting with local regulations to accommodate the new concepts — in the absence of any clear authority from the state — was considered an argument for proposing such legislation, not a reason to ignore the situation. [Babcock, "An Introduction to the Model Enabling Act for Planned Residential Development," 114 *U. of Pa. L. Rev.* 136, 137 (1965)].

The author enlarges upon this at page 138 by explaining that legislation was needed to stop the proliferation of ordinances which failed to take account of the numerous problems latent in the creation of open space by density zoning. The Legislature's unmistakable goal was to avert the chaos which threatened under *N. J. S. A.* 40:55–30 by the imposition of safeguards against abuse. In fact, the very section of the act upon which defendants rely, *N. J. S. A.* 40:55–55, expressly recites as one of its purposes

_____

[3] See *So. Burl. Cty. N.A.A.C.P. v. Mt. Laurel Tp., supra*, 67 *N. J.* at 166.

* * * to insure that the provisions of Revised Statutes 40:55–30, *et seq.*, which direct the uniform treatment of dwelling type, bulk, density and open space within each zoning district, shall not be applied to the improvement of land by other than lot by lot development in a manner that would distort the objectives of Revised Statutes 40:55–30, *et seq.* * * *

Finally, we find the legislative policy propounded by defendants too illogical and contradictory. The lawmakers would not create powers of such major public import, declare they could be exercised only by municipalities which comply with the meticulously detailed requirements of the enabling law, and then permit by intendment the use of the same powers, which were at most implied under a prior statute, free of the very restraints which it regarded as vital to the public interest and which lie at the heart of the legislation.

We therefore conclude that those forms of land use encompassed by PUD could properly have been authorized at the municipal level only in accordance with the controls specified by that act. *Cf. Ringlieb v. Parsippany-Troy Hills Tp.*, 59 *N. J.* 348, 352 (1971). As the Court observed in *Mountcrest Est., Inc. v. Rockaway Mayor and Tp. Com.*, *supra*.

*L.* 1967, *c.* 61, approved May 23, 1967, [PUD] authorizes municipalities to pass "open space," "cluster" and "planned community" zoning ordinances, but all ordinances adopted after the enactment of said statute will have to comply with its provisions. [96 *N. J. Super.* at 156]

The judgment of the Law Division is reversed and the resolution of the Wayne Township Council granting tentative approval of the Manitou project is vacated.